R. W. Milner, Jr., Johnnie Donoho Milner v. Commissioner.
R. W. Milner, Jr. v. Commissioner
Docket Nos. 29373, 29374.
United States Tax Court
1951 Tax Ct. Memo LEXIS 51; 10 T.C.M. (CCH) 1062; T.C.M. (RIA) 51323; October 30, 1951
*51 Marvin K. Collie, Esq., 11th Fl., Mellie Esperson Bldg., Houston, Tex., and R. P. Bushman, Esq., for the petitioners. Joseph P. Crowe, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: In these consolidated proceedings respondent determined deficiencies in income tax for the calendar year 1945 of $1,616.07 for R. W. Milner, Jr. and $1,436.20 for Johnnie Donoho Milner. The only issue for decision is whether the profits from the sale of certain oil and gas interests in 1945 were taxable as ordinary income or capital gains. Disposition of an issue with regard to medical and dental expense deductions depends upon decision on the main issue. Petitioners are husband and wife. During 1945 they resided in Houston, Texas and filed their income tax returns separately on the community property basis with the collector for the first district of Texas. R. W. Milner, Jr., hereafter referred to as the petitioner, is about 52 years of age. Since 1929 he has been engaged in the oil business, sometimes as sole proprietor and sometimes in partnership. In the 1930's petitioner's principal business was that of a lease broker, engaged in buying *52 for customers, mainly one of the larger oil companies, on a commission basis. From 1941 on, petitioner's principal aim was the accumulation of producing properties for himself with the intention of becoming an operator and developing oil and gas production and deriving income therefrom. His brokerage business became less important and in 1945 only five per cent of the time petitioner devoted to business was devoted to commission transactions. The number of producing properties held by petitioner increased from 10 in 1941 to 18 in 1945. In 1948 petitioner held 23 such properties. Gross production in dollars increased from $7,756.39 in 1941 to $8,573.93 in 1945. In 1948 the figure was $23,184.05. In 1945 petitioner did not advertise or list any of his oil properties for sale, nor did he hold himself out as a broker or dealer in such properties. In that year petitioner made a total of 16 sales of oil properties. Of these, eight were reported as ordinary income transactions and eight as transactions resulting in long-term capital gains. The ordinary income transactions were commission transactions undertaken in the request of old friends or because petitioner had some historical familiarity *53 with a particular area, which familiarity was known to interested parties. Of the sales of properties reported as long-term capital gains one property had been held for eight months; the holding period of the others ranged from two to three and a half years. Each of these sales was made by petitioner for a particular reason, such as a change in the geophysical picture, indicating that original information as to producing formation was wrong; to get a well drilled; to raise capital to develop remaining interests held by petitioner; and to raise money for the purpose of building a home and reducing petitioner's bank loans. Petitioner did not sell any producing properties during 1945 other than those mentioned above which were handled strictly on a commission basis. In 1945 petitioner paid delay rentals of $3,553.91; he had a dry hole expense of $13,280.20; and had royalties expire or become worthless in the sum of $1,477.51. In other years petitioner also paid substantial delay rentals and had substantial dry hole costs. In the taxable year petitioner owned oil and gas interests in 35 non-producing areas. These interests consisted of 150 to 250 different royalties and about 50 *54 leases. Except as to purchases and consequent immediate sales where the petitioner acted solely as an agent of either the purchaser or the seller, petitioner purchased potential oil and gas properties, including those in question here, with intent to retain them, obtain production, and derive income therefrom. In 1945 petitioner was in the business of being an oil operator and the properties sold in that year, the profits from which were reported as long-term capital gains, were used in that business. They were not held for sale to customers in the ordinary course of a trade or business. In determining petitioners' income taxes for 1945, respondent added to the community income the sum of $10,514.08, representing half the amount reported as long-term capital gain, on the ground that such amount was ordinary income "as the leases and royalties were held primarily for sale to customers in the ordinary course of trade or business". Opinion The question here is factual. Its answer depends to a large extent upon the intent of the petitioner and full consideration of the surrounding evidentiary facts. Greene v. Commissioner, (C.A. 5), 141 Fed. (2d) 645; Foran v. Commissioner, (C.A. 5), 165 Fed. (2d) 705.
*55 Respondent relies on the Greene case, supra, and several memorandum opinions of this Court to support his action. Petitioner finds support in Foran v. Commissioner, supra, and other of our memorandum opinions. We have studied the cases cited by both parties and have reached the conclusion that the properties involved here were acquired in connection with petitioner's business as an oil operator. They were not held for sale to customers in the ordinary course of petitioner's business. In arriving at this conclusion we accept petitioner's direct testimony as to his intention in accumulating properties after 1941 for the purpose of developing production. This testimony is supported by the facts that the number of properties held by petitioner increased during the period; that his income from that source was also increasing; that he did not hold himself out as a "dealer"; and that his commission business took but a small amount of his business time. Also, each of the sales made was adequately explained in relation to petitioner's business as an operator. That petitioner continued after 1941 to make some commission sales is not necessarily inconsistent with the fact that *56 we have found him to be an "operator" in 1945. A taxpayer can be engaged in more than one business. Royal W. Irwin, 37 B.T.A. 51. We are not unmindful that the factual situation here is close to that present in Greene v. Commissioner, supra, which was decided against the taxpayer. Here, however, we do have direct proof of intent or purpose, an element which the appellate court found lacking in the Greene case. This we cannot ignore. Foran v. Commissioner, supra. Accordingly, it is decided that respondent erred in treating the income from the sales in question as ordinary income. Decision will be entered under Rule 50.